IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br>RONALD BEARD III,<br>    Defendant. | Case No. 4:20-cr-150<br><br>REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS |

COMES NOW, the defendant, Ronald Beard III, and replies to the government's response to the motion to suppress, and moves the Court to suppress evidence seized from the storage unit, along with any subsequent incriminating statements made during and after his arrest, in addition to evidence seized from the search of the home, business, and phone pursuant to later obtained search warrants.

**A. Officers searched the storage unit without a warrant in violation of the Fourth Amendment.**

The problems with the timing of the search is not limited to the storage unit. The complete property report from the case shows that the search of the business resulted in seizure of evidence at 1:23 p.m. *See* Ex. B. at 4-9. The search warrant for the business was not signed until 4:52 p.m. on August 14, 2020. Gov't Ex. 2 at 2. The property report shows the seizure of evidence from the house at 3:16 p.m. Ex. B at 9. The search warrant for the house was signed at 4:52 p.m. Gov't Ex. 3 at 2. The property report gives very specific times for the recovery of all the evidence. Ex. B. The stated times of 3:16 p.m., 1:23 p.m., 11:08 a.m. and 11:40 a.m. are very precise and do not appear to be "inadvertently inaccurate." Officer Steinkamp indicates in his January 13, 2021, affidavit that the time stamp on the property sheet is "inaccurate and was

inadvertently entered incorrectly." Gov't Ex. 5.[1] The whole purpose of a property report is to establish chain of custody and proper recordkeeping in criminal cases. Inaccuracies such as this call into question the veracity of the officers involved in the search and seizures of all the locations. According to their own records, these searches occurred prior to the issuance of a search warrant, in violation of Mr. Beard's Fourth Amendment rights. It appears the search of the storage unit was a warrantless search with no legitimate exception, and therefore presumptively unreasonable. There were no exigent circumstances or consent that allows the search to be legal. Therefore, the evidence seized from the storage unit should be suppressed, as well as the subsequent searches which were supported by the storage unit search warrant.

**B. The affidavit in support of the search warrant lacked probable cause and any nexus to illegal activity, and was in violation of the Fourth Amendment.**

If the Court determines that the storage unit was not illegally searched prior to the issuance of the search warrant, there is still the issue of a lack of probable cause. The affidavit does not include "extensive evidence" of criminal activity by Mr. Beard.

The trash pull on June 17, 2020, did not result in the finding of anything illegal. First, there is no evidence the packages belonged to Mr. Beard; second, there is no evidence there were any substances in the packages; and third, the packages were not tested for any illegal substance. *See* Ex. B, C, D. As the officer's bypassed the lock on the dumpster, so could have any passer-by, thereby disposing of the packaging. The photos do not show the boxes as they were allegedly found in the dumpster. *See* Ex. C. Merely because the packages were thrown into a communal business dumpster in an empty box that had Mr. Beard's name on the box, does not

---

[1] Contrary to the government's assertion in Docket 45, n.1, Govt. Ex. 5 was not previously made available in the discovery file. It was first provided when filed on January 29, 2021.

show criminality by Mr. Beard. That the package states it contains a "cannabis infused" product does not mean that it actually did. There is no lab report to show the illegality of the packaging between the date it was retrieved on June 17, 2020, and the date of the affidavit, August 14, 2020. The wording of the affidavit, however, certainly implied the packages contained an illegal substance. Gov't Ex. 1 at 13. Those statements to Judge Bremer were misleading, as Officer Steinkamp did not know if the package contained anything illegal.

The surveillance of Mr. Beard likewise also did not corroborate any illegal activity. The "records review" done by the officers merely showed the locations of Mr. Beard's business, storage unit, and home, and it did not corroborate any illegal activity on Mr. Beard's part. Social media "research" likewise did not provide any illegal activity by Mr. Beard.

There is nothing in the search warrant affidavit that suggests illegal activity by Mr. Beard aside from the untested confidential informant, and the alleged positive alert by Blaise. The government asserts that "the affidavit clearly outlines that Blaise is a trained and certified narcotics detection canine." Docket 45 at n.5. However, the affidavit does *not* state that Blaise is "certified." Gov't Ex. 1 at 9. In order to withstand judicial scrutiny, a drug detection dog must be certified. Judge Bremer did not have that information.

The government does not address the failure of Officer Stuhr to activate her body camera. Des Moines Police Department policy on the use of body worn cameras defines the mandatory wearing by officers when in uniform and responding to calls for service while on-duty. *See* Ex. E at 2. It is mandatory for an officer to record "[u]pon arrival at the scene of a call for service," and any "encounter that is investigative." *Id*. The lack of body camera footage from Officer Stuhr indicates she violated mandatory department policy. Failure to follow departmental policy

in recording is not a technicality. It is a strike against the officer and calls into question her credibility. The reason officers are required to activate their body cameras when conducting a search is to provide evidence; and for their actions to withstand scrutiny. Since no contemporaneous recording was made, it is impossible for Mr. Beard to know whether the dog actually alerted, and therefore serve as probable cause for the search warrant. Omitting the failure in department policy to capture the search in the affidavit is therefore problematic.

      The confidential informant in this case did not provide evidence that was corroborated with regard to illegal ongoing drug activity. The only information from the CI that was corroborated was the existence of Mr. Beard's legal business. The CI's allegation that Mr. Beard was involved in the distribution of marijuana was certainly not "extensively corroborated" between May and August 2020. The CI never mentioned that Mr. Beard had a storage unit, or that drugs would be at a storage unit. Without knowing who the CI is, it is impossible for Mr. Beard to specifically challenge the veracity of the CI, and therefore to provide the Court with such evidence. More information should have therefore been provided to Judge Bremer about the CI and whether or not the CI has *previously* provided reliable information.

      All of the cases cited by the government on page 9 of their brief in support of a probable cause finding are distinguishable because they include facts of actual illegal activity. The same cannot be said for the affidavit in this case. The government attempts to point to a number of things that corroborate the CI, but none of those establish probable cause of *illegal* activity.

      Accordingly, this Court should conclude that the affidavit presented to Judge Bremer failed to establish probable cause for the issuance of the search warrant of the storage unit. Because the seizure of the marijuana, ecstasy, and the firearm described in the indictment, and

Mr. Beard's incriminating statements were a direct consequence of the insufficient search warrant, they must be suppressed.

## CONCLUSION

For these reasons, Mr. Beard asks the court to find probable cause did not exist for the search warrant, and suppress all evidence and incriminating statements that followed.

Respectfully submitted,

*/s/ Melanie S. Keiper*
MELANIE S. KEIPER, Asst. Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: melanie_keiper@fd.org
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2021, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Morgan Conn*, Paralegal